**C. C. PITTS, Appellant,**

v.

**A. G. BARCLAY, Appellee.**

No. 16504.

Court of Civil Appeals of Texas.

Fort Worth.

March 20, 1964.

Rehearing Denied April 24, 1964.

Jones, Fillmore, Robinson & Lambert and Larry Lambert, Wichita Falls, for appellant.

Jack Fields, Port Lavaca, Short & Smith and Donald E. Short, Wichita Falls, for appellee.

MASSEY, Chief Justice.

From a judgment for plaintiff A. G. Barclay in a suit for damages resulting from an automobile-truck collision, the defendant C. C. Pitts appealed.

Judgment reversed and remanded.

The collision giving rise to the suit occurred on U. S. Highway No. 62 in the State of Oklahoma, approximately two (2) miles south of the town of Apache. The road in the vicinity of the collision is asphalt pavement, approximately 20–22 feet in width, with shoulders of only about 5 feet to either side. The highway runs in a general direction from south to north. About 150 feet (or 50 yards) south of the point of the collision is the crest of a hill. As one drives from south to north there is a sign at the crest of the hill informing motorists that they are approaching a dangerous curve to the right and that said curve lies "800 feet ahead". This means, of course, that the point of the collision was approximately 650 feet south of the point

where a northbound motorist would encounter the curve and on the slope between the crest of the hill and the beginning of the curve.

The collision occurred in the nighttime and when it was raining, the pavement of the roadway being wet and slick.

The defendant was in the business of hauling sand and gravel and crushed rock. Pursuant to this business he had several trucks with semitrailers attached, and employed several drivers to operate the same. On the night of the collision two of these drivers, each with a truck and semitrailer, delivered sand to a consignee in Lawton, Oklahoma, after which they drove a few miles north to a rock crushing plant off the highway. Both trailers were loaded with crushed rock. The drivers of the trucks, hauling the loaded crushed rock, drove onto Highway No. 62 and proceeded toward Apache. They were driving in a northerly direction.

The first of the two trucks reached the curve aforementioned, and either while negotiating it or in the process of entering it his truck went out of control so that it "jackknifed" and came to a stop partly on the paved portion of the highway and partly on the shoulder or in the ditch at the right-hand side thereof. The second truck was some distance behind the first when this occurred. Its driver became aware of the occurrence after passing the crest of the hill when the headlights of the truck "settled down" upon the roadway ahead as it started on the downgrade toward the curve. It was at this time that the second truck went out of control and "jackknifed" on the roadway north of the crest of the hill, but south of the curve. Repeating: this second truck and semitrailer came to a stop on the downslope to the north about 150 feet (or 50 yards) north of the crest of the hill, and still a considerable distance (approximately 650 feet) from the point where the first truck and semitrailer was stopped (in "jackknifed" position) on the curve.

The driver of the second of the two trucks was aware of the fact that the automobile of the plaintiff was traveling toward the north on the same highway and was behind his trailer. When the second truck and semitrailer "jackknifed" and came to a stop the semitrailer was across and completely obstructing the right-hand side (east side) of the paved portion of the highway. The front thereof was stopped pointing toward the east and rear end of the trailer was two or three feet across and upon the west side of the pavement. The truck-tractor portion of the vehicle was to the north of the semitrailer, with the front portion, and the burning headlights, toward the west.

As the driver of the second truck prepared to get out of the truck cab immediately after his vehicle came to a stop, but before he got out, the automobile of the plaintiff had struck into the right side of the semitrailer and into the underpart of the same. The left front of plaintiff's automobile was damaged extensively, as was the left front portion of the top, and the windshield post supporting the same.

As applied to plaintiff, what had occurred was that he "topped" the crest of the hill and started down the slope to the north, whereupon his headlights disclosed the presence of the defendant's second truck obstructing the pavement, or at least the right-hand or east one-half thereof, whereupon he applied his brakes and skidded (on the wet pavement) into the side of the semitrailer. By its answers to special issues, the jury acquitted the plaintiff of any act or omission asserted by the defendant as contributory negligence. The jury also found that the collision and resulting injuries and damages sustained by the plaintiff were not the result of an unavoidable accident.

In the court's charge to the jury the term "proper control" was defined as "such control that a person of ordinary prudence would have kept under the same or similar circumstances". There was no complaint of the term as so defined. By answer to

Special Issue No. 7 the jury found that the driver of the second of the defendant's trucks "failed to keep the truck under proper control at the time and on the occasion in question". By an appended issue the jury found such failure to have been a proximate cause of the collision therewith involving the plaintiff.

By negative answers returned to special issues the jury refused to find the defendant's driver negligent in respect to excessive speed or in driving a truck with defective brakes. Pleaded and raised by the evidence, but not submitted as special issues, were questions relative to whether the driver of the second truck of the defendant was negligent in respect to the manner of his application of brakes on the truck and semitrailer, and in respect to his failure to properly steer the truck. There was no complaint because of the absence of such issues from the charge. Not pleaded (except to be implied as an element of defendant's driver's lack of control) was the question of whether the driver of the second truck failed to keep a proper lookout. Naturally there was no submission of any special issue thereon. We are of the opinion that under the circumstances of the case, and as applied to the question of the lack of control of his vehicle by the driver of the second truck, elements thereof included (but not submitted in special issues) were issues upon the matter of his lookout, his failure to make proper application of brakes, and his failure to properly steer the truck. It would therefore be proper to say that the issues submitted upon the matter of his lack of control (and the proximate cause issue appended) would have been and was answered by the jury in a consideration of these elements. It would not be proper to say that the jury, in arriving at its answers, considered the matter of speed and whether the brakes were defective, for findings against the plaintiff's contentions thereupon appear elsewhere in the charge.

In Hodges on Special Issue Submission in Texas, p. 108, "Size and Number of Issues", § 39, "Particular Problems in Negligence Cases", sub., "Proper Control", it is said: "* * * the inquiry as to control is general and involves several different aspects of the operation of an automobile. It involves speed, use of brakes, use of the correct highway lane, and turns made, each of which is ordinarily the proper subject of a separate issue.

"Certainly, if issues are submitted asking about such specific phases of the driver's conduct, the general issue as to control would be a duplication and should not be submitted. Conversely, if the proper control issue is submitted, the issues inquiring about specific acts or omissions would be duplications and should not be submitted. Apparently the question of the propriety of submitting an issue on proper control in any event has not been presented directly for appellate decision by objections pointing out that it is a broad and general submission covering several specific acts or omissions. The opinion may be expressed that such a submission, if appropriate objection is made, should not be made."

Cases listed under footnotes to these two cited paragraphs include: Triangle Cab Co. v. Taylor, 1946, 144 Tex. 568, 192 S.W.2d 143; Blaugrund v. Gish, 1944, 142 Tex. 379, 179 S.W.2d 266; Schuhmacher Co. v. Holcomb, 1944, 142 Tex. 332, 177 S.W.2d 951; Northeast Texas Motor Lines v. Hodges, 1942, 138 Tex. 280, 158 S.W.2d 487; and Fullingim v. Dunaway, 1954 (Tex.Civ.App., Beaumont), 267 S.W.2d 483. See also: Cunningham v. Suggs, 1960 (Tex.Civ.App., Eastland), 340 S.W.2d 369, writ ref., n. r. e.; Brown v. Vigeon, 1963 (Tex.Civ.App., Beaumont), 367 S.W.2d 727, writ ref., n. r. e.

The propriety of submitting an issue on proper control "in any event" in a case submitted on special issues is now presented directly for appellate decision for in this instance the defendant objected to the charge on lack of control on the ground that "such issue is a general issue, amounts to a general charge and combines several elements into one."

In the Supreme Court opinion in Milton Kainer v. James W. Walker, Texas Supreme Court Journal of February 15, 1964, Vol. 7, No. 18, p. 226, it was held that a defendant is entitled to have the plaintiff's case submitted on special issues and the jury's determination of each controverted and ultimate issue of fact considered and determined separately,—and that even though the defendant has not excepted to pleadings of the plaintiff relying on a general allegation of his negligence the defendant has established and preserved his right to a special issue form of submission by an objection to the charge which complains of the general or global submission (as by a general charge),—and it becomes the plaintiff's obligation in such an instance to obtain the submission of and favorable findings to (enough) special issues, which separately submit each controverted and ultimate issue of fact, to support judgment in his behalf,—and that by reason of the defendant's proper objection thereto the plaintiff cannot have sufficient support for a judgment in his behalf predicated solely upon favorable findings returned to a general issue(s) upon the defendant's negligence.

■ We believe the following to constitute a correct statement of procedural law: Though pleadings of either general primary negligence or general contributory negligence exist unimpaired in the pleadings at time for the submission of the court's charge to the jury, the party so pleading shall not be entitled to prevail upon a mere favorable answer(s) by the jury on a general issue(s) relative to his adversary's negligence if that party should properly object to that character of submission(s), and in a compliance with proper procedure the party is bound to prevail, if at all, upon answers returned to special issues.

■ Since an issue which submits the question of whether the driver of a motor vehicle failed to keep the same under "proper control", under a definition of the term as "such control that a person of ordinary prudence would have kept under the same or similar circumstances", amounts to a general charge and is a global submission of negligence, a favorable finding thereto returned (and to the appended issue on proximate cause) cannot alone, in and of itself, support a plaintiff's judgment in a case where the defendant has objected to the issue on that ground. Such is the exact situation in the instant case. The judgment based upon the verdict was therefore erroneous.

What we have set out hereinabove governs our disposition of the case. We have considered the defendant's points of error advancing propositions which if sustained would require us to render a judgment in his favor. They are severally overruled. We have also considered defendant's points of error, other than those embraced by our discussion, which if sustained would require a remand of the case for another trial. These we overrule as either moot or without merit.

Judgment is reversed and the cause is remanded.